UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASON P. FOWLER,<br>    Plaintiff, | Case No. 2:22-cv-3523<br>Watson, J.<br>Litkovitz, M.J. |
| vs. | |
| CASE MANAGER MICHAEL C. BROWNING,<br>    Defendant. | REPORT AND<br>RECOMMENDATION |

This matter is before the Court on defendant Case Manager Michael C. Browning's motion for summary judgment and supplement thereto (Docs. 23, 33), plaintiff's opposition memorandum and supplement thereto (Docs. 28, 35),[1] plaintiff's "declarations" (Docs. 10, 25, 29, 31, 36, and 37) and defendant's reply (Doc. 38).  Defendant argues that he is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies, and, alternatively, he is entitled to qualified immunity on all claims.

I.      Background

Plaintiff is a former inmate at the Madison Correctional Institution (MACI) in London, Ohio.  He brings this civil rights action under 42 U.S.C. § 1983 against MACI Case Manager Michael C. Browning.  After initial screening of the complaint under 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b), the Court determined that only plaintiff's First Amendment retaliation claims,[2] Fourth Amendment unreasonable search claim, and Eighth Amendment failure to protect claims be allowed to proceed.  (Doc. 5 at PAGEID 110; Doc. 7).

---

[1] Plaintiff also filed a "Reply in Support of the Motion for Opposing Summary Judgment." (Doc. 39) more than three weeks after defendant's reply without leave of Court.  The Court does not consider this filing because it violates the local rules of this Court.  See S.D. Ohio Civ. R. 7.2(a)(2) ("No additional memoranda beyond those enumerated [(opposing and reply memoranda)] are permitted except upon leave of court for good cause shown.").
[2] The Court did not allow retaliation claims based on false/exaggerated conduct reports to proceed.  (See Doc. 5 at PAGEID 108).

Plaintiff alleges that defendant conducted an unreasonable strip search of him in the inmate laundry room as he was on the way to his institutional job. (Doc. 4 at PAGEID 66).[3] Plaintiff alleges that the room was not private and another inmate walked in during the strip search. (*Id.*). Plaintiff alleges that after he filed an informal complaint in October 2021 regarding that search, defendant was present for and facilitated a physical assault on him by inmate Stargill on December 17, 2021. (*Id.* at PAGEID 70 and 84). Plaintiff alleges that on the morning of April 19, 2022, defendant accompanied inmate Stargill into plaintiff's housing unit where, later that day, was he was physically assaulted again—this time by inmate Lambert. (*Id.* at PAGEID 72 and 100). Finally, plaintiff alleges that on October 25, 2021, he learned that a long-time visitor (Vonnetta Royal) had been notified that she was no longer approved, which this Court construed as a claim for retaliation. (Doc. 4 at PAGEID 69, 79-81; Doc. 5 at PAGEID 105).

Defendant's motion for summary judgment is supported by several documents. First, defendant proffers the declaration of Zachary Gould, the Ohio Department of Rehabilitation and Correction (ORDC) Institutional Inspector assigned to MACI and custodian of its grievance appeals. Appended to Mr. Gould's declaration are plaintiff's communication record (listing kites, informal complaints, grievances, and appeals) and grievance records in three cases in which plaintiff completed the administrative grievance process completely. (*See* Doc. 33-1). Second, defendant proffers the declaration of MACI's Correction Warden Assistant Kelly Blakeman. Appended to Ms. Blakeman's declaration are the Offender Tracking System Portal's record of plaintiff's approved visitors and dates of visitation; and plaintiff's

---

[3] While plaintiff's complaint does not allege the date that the search occurred, copies of a JPay message to "TIP Services" and kite attached to one of his declarations reflect that it occurred on August 10, 2021. (*See* Doc. 36 at PAGEID 378-79).

disciplinary history documents related to incidents on or around October 25, 2021, December 17, 2021, and April 19, 2022.  (*See* Doc. 33-2).  Third, defendant proffers a MACI Incident Report from plaintiff's December 17, 2021 physical altercation with another inmate.  (*See* Doc. 33-3).  Fourth, defendant offers his own declaration.  (Doc. 33-4).

Plaintiff's complaint and opposition briefs are unverified, but he has submitted an affidavit and several "declarations" throughout the course of this action.  (*See* Docs. 10, 22, 25, 31, 36,[4] and 37).  An unsworn "declaration must comport to the following form: 'I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).'"  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (quoting 28 U.S.C. § 1746(2)).

Plaintiff's first declaration conforms to statutory requirements (*see* Doc. 10 at PAGEID 122, 124).  In it, plaintiff explains that he became aware of misspellings of two names on his approved visitor list on November 14, 2022.  He attaches a notarized copy of the Offending Tracking System Portal's record of approved visitors reflecting those misspellings ("Tameko" and "Thersa" as opposed to the correct spellings "Tamiko" and "Theresa") signed by WCI's Institutional Inspector on November 15, 2022 (*see id.* at PAGEID 125).  Though these visitors are not referenced in plaintiff's complaint, this is consistent with plaintiff's allegation that defendant "manipulated ODRC visiting list files" by altering the spelling of approved visitors' names so that "the computer didn't reco[g]nize" them and would not allow them to schedule visits.  (Doc. 4 at PAGEID 69).

Plaintiff's second declaration does not conform to statutory requirements.  (*See* Doc. 25 at PAGEID 236).  Rather than describing plaintiff's personal knowledge, this filing includes

---

[4] Document 29 is identical to document 36 except that document 29 has no certificate of service, and the second page in document 36 (PAGEID 375) appears as the last page of document 29 with a different date.

3

unauthenticated copies of internal ODRC documents, a Franklin County Common Pleas Court detail data inquiry reflecting the correct spelling of "Tamiko Foster" (*id.* at PAGEID 231), and a WCI kite and response reflecting the correct spelling of "Theresa Fowler" (*id.* at PAGEID 232-33).

Plaintiff's third declaration conforms to statutory requirements (*see* Doc. 31 at PAGEID 294, 303). Plaintiff reiterates his belief that defendant changed the names of approved visitors, because the record attached to defendant's motion for summary judgment (Doc. 33-2 at PAGEID 340, 342-43, and 345) includes misspellings of "Tamiko Foster," while the record generated following plaintiff's WCI kite request reflects the correct spellings of both "Tamiko Foster" and "Theresa Fowler." (*See* Doc. 31 at PAGEID 297-302).

Plaintiff's fourth declaration conforms to statutory requirements (*see* Doc. 36 at PAGEID 374, 392). Plaintiff includes his JPay records of tips and kites from August 10, 2021 regarding defendant's unprofessional behavior and strip search, an excerpt from the ORDC Code of Conduct; a November 15, 2022 notarized copy of plaintiff's approved visitor list showing "Vonnetta Dawn Royal"; JPay correspondence with Ms. Royal from July 28, August 23, and October 26, 2021 reflecting that she was unable to schedule visits with plaintiff; ODRC's denial of plaintiff's request for institutional security video footage; and ODRC's inmate discipline history record for plaintiff.

Plaintiff's fifth declaration conforms to statutory requirements (*see* Doc. 37 at PAGEID 393, 406). Plaintiff offers his own rendering of the area where the strip search took place (*see id.* at PAGEID 396) and explains that several other, accessible, commonly used areas were available instead of the laundry room. Plaintiff also highlights the fact that defendant states in his declaration that he was not present during plaintiff's April 2022 physical assault, but he

does not denying causing the incident. Plaintiff refers to then fellow MACI inmate Shawn Patterson's notarized affidavit (Doc. 22), in which Mr. Patterson avers that in February 2022, defendant promised that he would decrease Mr. Patterson's security level if he "whack[ed]" (i.e., "crashed-on or assaulted") plaintiff. (Doc. 22 at PAGEID 172). Plaintiff also attaches without elaboration a copy of *Critendon v. Cooper*, No. 2:20-cv-2062, 2023 U.S. Dist. LEXIS 95178 (D. Nev. May 1, 2023).

II.     **Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House*, *Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his

pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). A party's status as a pro se litigant, however, does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

II.  Analysis

  A. PLRA exhaustion requirement

Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. "A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)).

7

Thus, defendants bear the burden of proof on exhaustion. *Id.* To succeed, defendants' evidence must satisfy their burden of persuasion, such that "no reasonable jury would be free to disbelieve it." *Id.* at 456 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

Exhaustion may be excused where the grievance process is unavailable, which includes:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb v. Kendrick*, 52 F.4th 286, 292-93 (6th Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). In order to rely on the excuse of unavailability of the grievance process, a prisoner must first demonstrate that affirmative action was taken to comply with the prison's grievance process. *Id.* at 293 (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Administrative Code § 5120-9-31, is a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member or department most directly responsible for the subject matter of the complaint within 14 calendar days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement within 14 calendar days from the date of the informal complaint response. Ohio Admin. Code § 5120-9-31(J)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within 14 calendar days of receipt of the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the Office of the Chief Inspector of the Ohio Department of Rehabilitation and Correction (ODRC) within 14 calendar days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(J)(3). Compliance with this procedure is measured against "the prison requirements, and not the PLRA. . . ." *Jones*, 549 U.S. at 218.

    1. *Unreasonable search, inmate assaults*

With respect to the alleged strip search and related Fourth Amendment claim, defendant argues that plaintiff filed an informal complaint but did not complete steps two and three of the administrative grievance process. With respect to the alleged inmate assaults and related First Amendment retaliation and Eighth Amendment failure to protect claims, defendant argues that plaintiff took *no* action under the administrative grievance process. Defendant supports his position with Mr. Gould's declaration (Doc. 33-1 at PAGEID 323-325; ¶¶ 11-13, 15[5]), the

---

[5] This paragraph is mis-numbered in the document as "10."

attached communication record for plaintiff covering the period between the alleged unreasonable search and the filing of this lawsuit (*id.* at PAGEID 326-28), and the informal complaint itself (Doc. 4-1 at PAGEID 75).[6]  Based on his review of plaintiff's file, Mr. Gould concludes that plaintiff "did not complete the three steps of the inmate procedure for any of the allegations at issue in this civil action." (Doc. 33-1 at PAGEID 324, ¶ 11).

In his opposition, plaintiff does not appear to challenge the fact that he did not complete the administrative grievance process on any of these claims. Plaintiff references case law holding that exhaustion may be excused under circumstances where it is effectively unavailable, but plaintiff does not affirmatively allege any facts showing the ODRC grievance process was not available to him. In fact, plaintiff alleges nothing at all regarding his failure to proceed past step one on any of these claims—let alone anything that would raise a genuine issue as to whether he was somehow thwarted while seeking administrative remedies. *See Lamb*, 52 F.4th at 293 (quoting *Lee*, 789 F.3d at 677) (Before analyzing the unavailability of remedies, the Sixth Circuit requires that an inmate made "affirmative efforts to comply with the administrative procedures. . . ."). At most, plaintiff refers to the notation on his informal complaint record regarding the alleged strip search that his matter was "[c]losed. . . ." (*See* Doc. 35 at PAGEID 370, referring to Doc. 4-1 at PAGEID 75 (informal complaint)).

In reply, defendant emphasizes that plaintiff failed to come forward with evidence showing that he completed all three steps of the administrative grievance process as to these claims.

Defendants have established that there is no genuine issue of material fact that plaintiff failed to exhaust his administrative remedies with respect to his unreasonable search claim, his

---

[6] Mr. Gould references the related informal complaint as "Def. Exhibit A-4" (Doc. 33-1 at PAGEID 325, ¶ 13), but "Def. Exhibit A-4" is plaintiff's approved visitor-list-related appeal documentation (*id.* at PAGEID 334-35).

10

First Amendment retaliation claim related to the inmate assaults, or his Eighth Amendment failure to protect claim related to the inmate assaults. Plaintiff has made no argument regarding (or proffered any evidence demonstrating) an affirmative attempt to complete the administrative grievance process with respect to these claims. If this Court were to find that merely receiving a negative response to an informal complaint were sufficient to show that an administrative grievance process was effectively unavailable, the administrative grievance process would be rendered meaningless. Defendant's motion for summary judgment should be granted on these claims.

      2. *Approved visitor list*

Defendant acknowledges that plaintiff filed an informal complaint, Notification of Grievance, and Appeal related to issues with "2-3 individuals . . . not able to set visits. . . ." (Doc. 33-1 at PAGEID 334 (grievance document)). Defendant argues, however, that plaintiff did not initiate this grievance in a timely manner, and he therefore did not exhaust his administrative remedies with respect to this claim.

Plaintiff does not address defendant's timing argument. Plaintiff focuses on his proffered, notarized copy of his approved visitor list, signed by the WCI Institutional Inspector on November 15, 2022, reflecting two visitors' names misspelled ("Tameko Foster" and "Thersa Fowler). (*See* Doc. 35 at PAGEID 366-67, referencing Doc. 36 at PAGEID 385). Plaintiff contrasts this with an updated copy of his approved visitor list and visitor histories, reflecting correct spellings for "Tamiko Foster" and "Theresa Fowler." (*See* Doc. 31 at PAGEID 299).

In reply, defendant emphasizes that plaintiff failed to present any evidence to show that he completed the administrative grievance process in timeframe established under Ohio law.

Defendants have established that there is no genuine issue of material fact that plaintiff failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim related to his approved visitor list. "A prisoner must adhere to any time limitations that are part of the institutional grievance policy." *Surles*, 678 F.3d at 455. *See also Lamb*, 52 F.4th at 296 n.4 (quoting *Surles*) and *Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines. . . ."). In his complaint, plaintiff alleges that he learned about issues with his approved visitor list on October 25, 2021. (*See* Doc. 4 at PAGEID 69, 79-81). Over one year later, on November 15, 2022, plaintiff filed his related informal complaint at WCI. (*See* Doc. 33-1 at PAGEID 334). Plaintiff makes no argument that he adhered to the timing requirement under the administrative grievance process or that his attempt to comply was thwarted. *See* Ohio Admin. Code § 5120-9-31(J)(1) ("Within fourteen calendar days of the date of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member . . . most directly responsible for the particular subject matter of the complaint."). Defendant's motion for summary judgment should be granted as to plaintiff's First Amendment retaliation claim related to his approved visitor list.

While plaintiff does not make this argument in his brief, one of plaintiff's declarations suggests that "the date of the event giving rise to the complaint" under Ohio Admin. Code § 5120-9-31(J)(I) did not occur until November 14, 2022. (*See* Doc. 10 at PAGEID 122 ("On 11/14/2022 . . . I reviewed my visitation list and became aware that several visitors['] names w[ere] changed. . . ."); *see also* Doc. 33-1 at PAGEID 334 (November 17, 2022 communication from plaintiff to Mr. Gould in case number WCI1122001412) ("I just now became aware of this change that was made to my visitation list[.] . . . I wasn[']t aware that my visit list had been altered until[] 2[]days ago.")). November 14, 2022 is over a month *after* plaintiff filed this

lawsuit. No reasonable juror could believe that plaintiff did not discover the alleged tampering until November 14, 2022, where plaintiff filed a federal lawsuit alleging just such tampering approximately six weeks *prior* to that date. *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

B. Qualified immunity

Defendant's exhaustion affirmative defense is dispositive of all of plaintiff's claims. As such, the Court need not reach defendant's arguments that he is entitled to qualified immunity.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's motion for summary judgment (Doc. 33) be **GRANTED**; and
2. Defendant's prior motion for summary judgment (Doc. 23) be **DENIED as moot**.

Date: 3/8/2024

Karen L. Litkovitz
United States Magistrate Judge

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON P. FOWLER,
    Plaintiff,

vs.

CASE MANAGER MICHAEL C. BROWNING,
    Defendant.

Case No. 2:22-cv-3523
Watson, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof. This period may be extended further by the Court on timely motion by either side for an extension of time. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).